## Ben Cooper v. The State.

### No. 3719.    Decided December 4, 1907.

**Local Option—Sale—Insufficiency of the Evidence.**

Where upon trial for a violation of the local option law, the evidence showed that the State's witnesses did not intend to buy whisky, and that it was fully understood that the defendant was not selling it, but that the money was given to him because of his kindness in waiting on the State's witnesses, and not for the whisky, there was no violation of the law.

Appeal from the County Court of Hopkins. Tried below before the Hon. T. J. Russell.

Appeal from a conviction of violation of the local option law; penalty a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*C. E. Sheppard,* for appellant.—The local option law should be strictly enforced, if anything more strictly enforced than general laws because it is especially voted by the people, but it is only intended to cover sales of intoxicating liquor and not innocent transactions like the above when neither party ever thought of a sale of whisky.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of violating the local option law. Two legal questions are presented, one with

reference to the sufficiency of the pleading charging the offense, and the other with reference to the failure of the clerk to certify to the entry of the county judge on the minutes of the commissioners court that the publication of the result of the local option election had been published four weeks. As the bill of exceptions presents this, we do not believe there is any material error in the matter, and in fact the information and complaint are sufficient.

The main and serious question in the case is want of sufficient evidence to show a violation of the law. N. L. Lindsley testified that he was in Sulphur Springs attending court as a lawyer interested in a trial of a case then pending in the district court, and was stopping at the Garrison hotel. Appellant was working as porter for a few days, the regular porter, Joe, being sick, appellant working in his place. Mr. Bramlett, another lawyer, from Dallas, was occupying the room with the witness, Lindsley. In regard to the facts of the case bearing upon the alleged sale, we find the record discloses that on the morning of the 7th of December, appellant came to the room occupied by Messrs. Lindsley and Bramlett and built a fire, and that he seems to have been doing so every night and morning during their occupancy of the room. At least, it is stated positively that on the night before the alleged transaction in the morning, that appellant had built a fire; that Lindsley said to Bramlett that he was going to give Ben a dollar for having waited on him and attended to these matters; Bramlett demurred and said 50 cents was sufficient. So, on the next morning when Ben came in, Lindsley gave him the 50 cents. Appellant went out and returned with some wood. and upon his return the second time he said to Lindsley, "Boss, would you like to have a drink?" Lindsley told him he would. Lindsley said, "I don't know how appellant knew or thought I wanted whisky, but he hit it right, for I did. He went out, as I supposed to bring the drink and soon returned with a bottle of Craddock's 87, a quart, which had not been opened. He either opened it or I did and set it on the table in the room. I took a drink, probably two or three, and Bramlett also took one or two. I then told defendant to leave the bottle in there a little while, and appellant said let me have a little of it in a bottle for the chambermaid, and he either poured out some of it in a little bottle or I did for him and started out, leaving the rest on the table in the room. Lindsley then said to him, 'Give me that 50 cents I gave you this morning.' He handed it to me and I handed him a dollar instead. He took the dollar and said, 'Boss, this ain't for that whisky, is it?' I said, 'Certainly not, you couldn't sell it and I wouldn't buy it from you.' Appellant then put the dollar in his pocket and went out. I think I took another drink and then left the bottle in the room on the table for him (appellant) to get and went on to my breakfast. I did not give him the additional 50 cents for the whisky, simply felt a little more liberal after taking a drink or two, and then gave him the dollar that I had originally intended to give him. When I gave him the first 50 cents I followed Bramlett's suggestion in the matter. I did not buy the whisky, did not intend to and he did not

intend to sell it to me. Appellant gave me the whisky, and I had not then promised nor paid him anything and hadn't thought of doing such a thing. I went to breakfast and tipped the waiter to 50 cents. I certainly didn't give that for the breakfast for I got no more than if I had not done so. Honestly between man and man the defendant is not guilty of selling whisky and this thing is simply a farce." On cross-examination Lindsley states that he has been practicing law for several years in Dallas, and was there trying a case in the district court with Templeton, Crosby & Dinsmore; that he had some whisky when the defendant gave him this and had three quarts more coming on the 11 o'clock train. "This bottle of whisky was worth $1.50 and if I had been going to buy it I certainly would have given him more than 50 cents for it. If he sold me that bottle of whisky he got nothing for his work and only $1 for a $1.50 bottle of whisky. I did not give him the money for the whisky but for his kindness to me while there. It was not intended by me in giving him this additional 50 cents to evade the local option law and buy the whisky or to color a sale. It was not for the whisky and there was no sale to color."

Mr. Bramlett testified that he is an attorney and lives at Dallas, and was attending the district court at the date of the transaction. "On the date mentioned Mr. Lindsley told me that he was going to give Ben $1 for making fires, etc., and I told him that 50 cents was enough. I heard the defendant ask Mr. Lindsley if he wanted a drink and he told him yes. Defendant went out and soon returned with a bottle full of whisky. It was then opened. Mr. Lindsley made a toddy or two and I took a small drink straight. Mr. Lindsley asked defendant to give him the 50 cents back, which he did, then Mr. Lindsley handed him a dollar. Defendant said, 'This isn't for the whisky, is it?' Mr. Lindsley told him no, that he would not buy the whisky if he would sell it." This is the case on the facts, and it is all the evidence introduced in regard to the transaction. We are of the opinion that under this testimony the State has not made out such a case as would require a conviction in the trial court or an affirmance at the hands of this court. If the State's case is to be relied on, as made by the two witnesses, Lindsley and Bramlett, then they did not intend to buy the whisky, and that it was understood fully that the negro was not selling the whisky; that the money was given to the negro because of his kindness in making fires and waiting upon the two gentlemen in their room.

Because we are of the opinion the evidence is not sufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.